IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA GILLIS, THOMAS GILLIS, SCOTT R. McCLELLAND, and KIMBERLY A. McCLELLAND, individually and on behalf of all others similarly situated | : : : : : | CIVIL ACTION |
| | : | No. 14-3856 |
| v. | : | |
| | : | |
| RESPOND POWER, LLC | : | |

MEMORANDUM

**NORMA L. SHAPIRO, J.**                                                                                           **AUGUST 31, 2015**

      This is a class action against Respond Power, LLC ("Respond"), an electric generation supplier in Pennsylvania. Between November 2010 and June 2014, Respond entered into variable rate contracts with Pennsylvania customers for residential electrical service. The class representatives allege that every variable rate contract promised customers a rate cap and that Respond breached those contracts and violated the implied covenant of good faith and fair dealing. Plaintiffs move to certify the putative class as to their contract and implied covenant claims. Because the requirements of Federal Rule of Civil Procedure 23(a) are not met, class certification will be denied.

**I.     BACKGROUND**

      The putative class consists of all Pennsylvania residents who entered into variable rate contracts with Respond between November 2010 and June 2014. Am. Compl. ¶ 59. Approximately 50,000 Respond customers entered into variable rate contracts during the proposed class period. Am. Compl. ¶ 11.

      This action turns on the meaning of an allegedly uniform Disclosure Statement ("Disclosure Statement") included in all of Respond's variable rate contracts. Am. Compl. ¶ 2; Ex.

A.  Respond does not deny that the Disclosure Statement was uniform and included in every one of its variable rate contracts during the proposed class period.  Tr. at 9(22)-10(4).  In relevant part, the Disclosure Statement reads: "Respond Power's goal each and every month is to deliver your power at a price that is less than what you would have paid had your [sic] purchased your power from your local utility company, however, due to market fluctuations and conditions, Respond Power cannot always guarantee that every month you will see savings."  Ex. A.[1]

Plaintiffs argue that the Disclosure Statement promised customers a variable monthly rate capped at the rate charged by their local utility.  Am. Compl. ¶ 72.  They allege that Respond breached its variable rate contracts by failing to adhere to the alleged rate cap.  *Id.*  Plaintiffs further allege that Respond breached the implied covenant of good faith and fair dealing by failing to disclose that its rates could exceed local utility rates.  Am. Compl. ¶ 86.  Plaintiffs move to certify the proposed class as to those two claims.

Class representatives

The representatives of the putative class are Barbara Gillis, her son Thomas Gillis, Scott McClelland, and his wife Kimberly McClelland.

On April 25, 2013, one of Respond's door-to-door salespeople encouraged the Gillises to leave their local utility PECO for Respond and gave them a copy of the Disclosure Statement.  Am. Compl. ¶ 8.  The Gillises switched to Respond.  Am. Compl. ¶ 9.  Respond charged the Gillises a monthly rate higher than the PECO rate from July 2013 through February 2014.  Am. Compl. ¶ 9.  Thomas Gillis has stated that he did not believe Respond was bound by a rate cap or that an

---

[1] Respond's Disclosure Statement provides that it "shall be construed under and . . . governed by the laws of the State of Pennsylvania without regard to the application of its conflicts of law principles."  Ex. A at ¶ 13.

increase in Respond's variable rate was in violation of any contractual term; rather, in his view, "it was not good business practice." King Cert. ¶ 5 at 55(3-9). He also stated that, at the time he entered into Respond's variable rate agreement, he was not guaranteed a rate cap by Respond's sales representative. King Cert. ¶ 5 at 33(4-22). Barbara Gillis has stated she did not know if Respond was bound by a rate cap. King Cert. ¶ 4 at 55(9-22).

The McClellands left their local utility Penelec for Respond after, on May 7, 2013, one of Respond's door-to-door salespeople encouraged them to make the switch and gave them a copy of the Disclosure Statement. Am. Compl. ¶ 10. Respond charged the McClellands a rate higher than the Penelec rate from July 2013 through April 2014. Am. Compl. ¶ 11. Kimberly McClelland has stated that she was not assured a rate cap by her sales representative, just a "surplus of energy." King Cert. ¶ 6 at 17(2-13). She also stated that she did not know if the Disclosure Statement promised a rate cap. *Id.* at 51(20-25). Scott McClelland was not present when the McClellands' variable rate contract was signed; his understanding of the contract's terms was based on conversation with his wife and his grasp of energy deregulation in Pennsylvania. King Cert. ¶ 7 at 86(2-13).

## II. DISCUSSION

To be certified, a "putative class must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am.*, 687 F.3d 583, 591 (3d Cir. 2012); FED. R. CIV. P. 23.

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable" (numerosity); "there are questions of law or fact common to the class" (commonality); "the claims or defenses of the representative parties" must be "typical of the claims

or defenses of the class" (typicality); and the class representatives must "fairly and adequately protect the interests of the class" (adequacy). FED. R. CIV. P. 23.

### Numerosity

Because joinder would be impracticable for the approximately 50,000 Respond customers who entered into variable rate contracts with Respond between November 2010 and June 2014, the numerosity requirement is satisfied.

### Typicality and Adequacy

The Third Circuit has held that "[t]he proper consideration in assessing typicality . . . include[s] three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

Although the class representatives rely on the same legal theory and underlying facts as the rest of the putative class, namely that Respond broke a contractual promise to adhere to a rate cap and breached the implied covenant of good faith and fair dealing by failing to disclose that its rates could exceed those of local utilities, the class representatives are vulnerable to certain defenses that may be inapplicable to the rest of the putative class. Three of the four class representatives either believed Respond was not contractually bound by a rate cap (Thomas Gillis) or did not know if it was (Barbara Gillis and Kimberly McClelland). King Cert. ¶ 4 at 55(9-22); ¶ 5 at 55(3-9); ¶ 6 at

51(20-25). The fourth (Scott McClelland) believed the contract provided for a cap, but his understanding of the contract was based not on its terms, but rather conversation with his wife and a general understanding of energy deregulation. King Cert. ¶ 7 at 86(2-13). The class representatives have also said they were not guaranteed rate caps by Respond's sales representatives. King Cert. ¶ 5 at 33(4-22); ¶ 6 at 17(2-13).

If Respond's Disclosure Statement expressly provided for a rate cap, the sales experiences and contractual intent of the class representatives would not be material. But it does not. It states that Respond's "goal" is to beat the price charged by local utilities and adds the caveat that Respond "cannot always guarantee" monthly savings. Ex. A. Plaintiffs construe the word "goal" to mean "promise." That is an implausible reading of the contract. *See, e.g.*, *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004) ("If left undefined, the words of a contract are to be given their ordinary meaning."). But even if the contract were treated as ambiguous, "it is parol evidence that reveals the parties' intent." *Id.* at 1165. Parol and extrinsic evidence may not support plaintiffs' preferred reading of the contract: at the time they entered into a variable rate agreement with Respond, three of the four class representatives either did not believe or did not know if Respond was contractually bound by a rate cap. Nor do they claim they were guaranteed a rate cap by Respond's sales representatives. These factual circumstances make the class representatives vulnerable in ways other members of the putative class may not be. Typicality is not satisfied.[2]

The class representatives are not adequate for the same reason they are not typical. The adequacy inquiry has two parts: the first "tests the qualifications of the counsel to represent the class. . . . The second component of the adequacy inquiry seeks to uncover conflicts of interest

---

[2] All the class representatives entered into contracts with Respond in 2013. Yet the proposed class covers customers from as far back as 2010. This disparity raises typicality concerns.

between named parties and the class they seek to represent. There are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and the alignment of interests, and this second part of the adequacy inquiry." *In re Schering Plough*, 589 F.3d 585, 602 (3d Cir. 2009). The class representatives are subject to defenses that may not apply to other members of the putative class and, for that reason, may not "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Adequacy is not satisfied.

<u>Commonality</u>

In *Wal-Mart Stores, Inc. v. Dukes*, the United States Supreme Court clarified the stringency of the commonality requirement. 131 S.Ct. 2541 (2011). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Id.* at 2551. The putative class claims "must depend upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common questions-even in droves-but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.*

Plaintiffs argue that two questions are common to the putative class: (1) whether Respond's uniform Disclosure Statement promised a rate cap; and (2) whether Respond breached the implied covenant of good faith and fair dealing by failing to disclose that its rates could exceed those charged by local utilities.

Those questions will not yield common answers. The Disclosure Statement does not expressly provide for a rate cap; if deemed ambiguous, parol and other extrinsic evidence would

need to be considered to resolve its meaning. That evidence would vary by customer, especially since Respond hired numerous third-party vendors for door-to-door solicitation and used at least five different companies for telephone solicitation in Pennsylvania. Small Dep. at 17(20-24), 60(9-20). The class representatives themselves do not share the same understanding of their contractual rights. Respond's 50,000 variable rate customers could not be expected to either. Commonality is not satisfied.[3]

### III.   CONCLUSION

Because the putative class does not comply with the typicality, adequacy, and commonality requirements of Federal Rule of Civil Procedure 23(a), class certification will be denied. Plaintiffs may proceed with this action in their individual capacities. An appropriate Order follows.

---

[3] For the same reasons, individual questions would predominate over questions common to the class. The putative class would not be certifiable under Rule 23(b)(3). Because the Disclosure Statement is not susceptible to interpretation on a classwide basis, certification under Rule 23(b)(2) would also be denied.